EASON v. FOWLER et al.　(No. 2020.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 22, 1918. On Motion for Rehearing, Dec. 5, 1918.)

1. VENDOR AND PURCHASER ⬳187—ACCEPTANCE OF PAYMENT—WAIVER.

Where a land contract provided that the sale might be declared void if the first note with interest were not paid on a fixed date, and the grantee refused to accept the payment, he waived his right to payment on such date.

2. VENDOR AND PURCHASER ⬳320—ACTION FOR PURCHASE MONEY—ATTORNEY'S FEES.

Where notes given for purchase price of land contained only the usual stipulations regarding payment of attorney's fees, refusal of vendor and payee to accept payment of the first note when it became due, at which time the maker of the notes and his vendee were ready and able to pay, estopped the payee from claiming attorney's fees.

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Proceeding between J. T. Eason and T. W. Fowler and others. From a judgment adverse to Eason, he appeals. Affirmed, and rehearing denied.

J. W. Gross, of Bonham, for appellant.
Rosser Thomas, of Bonham, for appellees.

HODGES, J. This case was tried in the court below without a jury, and the following is the substance of the findings of fact and conclusions of law filed by the trial judge:

In October, 1916, the appellant, Eason, sold to the appellee Fowler the tract of land in controversy. The conveyance recited a consideration of $1 in cash, the assumption of an unmatured mortgage debt of $1,400 due Pearson & Taft, and seven promissory notes for $314.30 each, the first of which was due on or before January 1, 1918, and one each year thereafter, all payable to Eason. The notes bore interest at the rate of 8 per cent. per annum payable annually, and contained the usual stipulations regarding payment of attorney's fees. At the time the conveyance was executed Eason and Fowler entered into a separate written agreement which, in effect, provided that if Fowler failed to pay the first note at maturity, together with the interest on the balance of the indebtedness which had accrued up to January 1, 1918, he was to pay Eason the sum of $288 as rents for the use of the land for the year 1917, and Eason had the right to declare the sale void and recover possession of the land. During the year 1917 the land was in possession of the appellee Carter as a tenant. In November of 1917 Fowler sold to J. R. Carruth for the sum of $600 cash and the assumption of all the notes and indebtedness assumed by Fowler, less interest which accrued up to January 1, 1918. Carruth had no notice, actual or constructive, of the written agreement between Fowler and Eason for the cancellation of the trade in the event of default in the payment of the indebtedness due January 1, 1918. The notes executed by Fowler to Eason were, in December, 1917, in the hands of Hendrix & Moor, land agents in Bonham. About the 28th of that month Fowler and Carruth went to the office of Hendrix & Moor for the purpose of paying the first note and the interest due on the remaining indebtedness. They were able and prepared to make such payment, and had previously notified Eason of their purpose, but the latter had instructed Hendrix & Moor not to receive payment. Some time prior to that date Eason had taken possession of the premises and had refused to permit Carruth or Fowler to go upon them. On January 1, 1918, Fowler was in Bonham, ready and willing and able to pay the interest on all of the notes, but Eason, who lived some distance in the country, was not there. On the day following Fowler and Carruth again went to Bonham and endeavored to pay the note and all interest due, but were not permitted to do so by Eason. At that time Fowler tendered Eason in cash the sum of $176, being the interest on the $2,200 Fowler notes, which was refused. Carruth had arrangements made for the First State Bank of Bonham to pay off the $314.30 note, and on that day informed Eason, requesting him to present the note at the bank, upon which it would be paid. The bank referred to was about a block from where the parties were at the time. Eason refused to present the note for payment, stating that he would not accept less

than an amount sufficient to discharge all of the notes, with 10 per cent. attorney's fees, and finally stating that he would not accept less than all of the notes with $31.50 as attorney's fees. He claimed that on that date the notes had been placed in the hands of an attorney for collection. On the same day Fowler went to the office of the agent of Pearson & Taft, ready and willing and able to pay the interest on the note held by them, but found that Eason had paid the interest an hour before. The court finds that Eason at no time after December 28, 1917, would have accepted the payment of the first note and interest unless attorney's fees were paid also. The value of the land in controversy had increased since the sale by Eason, and was worth much more than what Fowler had agreed to pay for it in the original trade. Carter occupied the premises up to the middle of December, 1917. He cultivated the land, agreeing to pay as rent one-third of the grain and one-fourth of the cotton. The cotton rent amounted to $177.70, which amount he deposited in the bank, and left the grain rent on the rented premises, and it was there at the time Eason took possession.

The court further finds that it had been agreed between Eason and Fowler in January, 1917, that Eason was to look after the collection of the rents for that year and to credit the value of the rents on Fowler's notes. The reasonable rental value of the premises, less the value of rents received by Carruth and Fowler for 1917, was the sum of $272.15. Fowler endeavored to pay the taxes, amounting to $14.85, due for the year 1917, but Eason had rendered the land in his own name previous to its rendition by Fowler, and the tax collector would not permit Fowler to pay taxes on that tract of land unless he paid all of Eason's taxes for the year 1917.

The court further finds that Eason so conducted himself as to indicate to Fowler and Carruth that he would not accept payment of the amounts due on the note and interest at any time from December 28, 1917, up to the date of trial.

[1, 2] The court concludes, as a matter of law, that Fowler and Carruth made no default in the payment of the principal of the first note or of any portion of the interest due or the taxes due on the land; that the declarations and conduct of Eason constitut-ed a waiver of payment on January 1, 1918, and he was estopped from claiming attorney's fees; that Eason's agreement to look after the rents for 1917 made him liable for the reasonable rental value of the premises, and the amount due him from Fowler should be credited with the sum of $272.15. The readiness and ability of Fowler and Carruth to pay the debt at the time it was due, and since that time, absolved them from liability for attorney's fees and from costs, provided the sum of $345, the balance due Eason, be paid into the registry of the court before the judgment becomes final; otherwise they will be charged with costs, and the land will be subject to a foreclosure for payment of the debt.

Judgment was rendered exonerating Carter from any liability, because of his having tendered and paid into court all the rents due, and in favor of Eason for the sum of $345 against Fowler and Carruth.

It is contended on this appeal that the evidence was insufficient to support the findings of the trial judge. We have examined the record, and have reached a contrary conclusion, and the judgment is affirmed.

### On Motion for Rehearing.

In disposing of this case on the original hearing the writer did not discuss the facts at length or the assignments of error in detail, because he felt that no useful purpose could be served by so doing. While an extended discussion of facts and assignments in this character of cases may interest the litigants concerned and their attorneys, it rarely benefits the profession at large. But the fact that all the issues involved are not discussed in detail in the written opinion is not, so far as this court is concerned, to be taken as evidence that the record was not examined, or that the questions raised were not carefully considered. We regard this case as purely one of fact. The evidence has again been examined, and we feel justified in saying that the material and controlling conclusions upon which the judgment must be sustained are amply warranted by the testimony. We are further of the opinion that the judgment rendered in the court below is not only legally correct, but is a just and fair disposition of the controversy upon its merits.

The motion for rehearing is overruled.